# The Children's Store v. Cody Enterprises, Inc. and State of Vermont

[580 A.2d 1206]

No. 87-482

Present: Dooley and Morse, JJ., and Barney, C.J. (Ret.), Martin, Supr. J. and Levitt, D.J., Specially Assigned

Opinion Filed August 3, 1990

*Richard E. Davis, Jr.,* of *Richard E. Davis Associates, Inc.,* Barre, for Plaintiff-Appellant.

*Dorothy L. Helling* of *Theriault & Joslin, P.C.,* Montpelier, for Defendant-Appellee Cody Enterprises.

*James W. Spink* of *Dinse, Erdmann & Clapp,* Burlington, for Defendant-Appellee State of Vermont.

**Dooley, J.** The Children's Store (plaintiff) leased space in the "Cody Block," a Montpelier building owned and maintained by defendant Cody Enterprises, Inc. (Cody). A fire consumed the building, and plaintiff sued Cody alleging that Cody's negligence caused the fire. Approximately three years later plaintiff joined the State of Vermont (State), which ran a liquor store in the building, as a defendant. The complaint against the State was dismissed because the court found that the statute of limitations had run. Trial by jury resulted in a verdict for Cody. Plaintiff's motion for a new trial was denied by the court. Plaintiff now appeals both the order granting summary judgment to the State and the denial of its motion for a new trial. We affirm as to defendant Cody and reverse as to defendant State.

Plaintiff argues here that: (1) the trial court improperly commented on the weight of the evidence regarding a disputed issue of fact in the presence of the jury; (2) the trial court failed to instruct the jury that electricity is a dangerous agency; and (3) the trial court erroneously granted summary judgment in favor of the State. After a discussion of the facts, we turn to plaintiff's arguments in order.

The Children's Store was a tenant in the Cody Block, a mixed-use office building in Montpelier. The State of Vermont Liquor Store also leased space in the block. On December 20, 1980, a fire erupted and consumed a large part of the building. The Children's Store was destroyed.

On October 28, 1983, plaintiff sued Cody alleging that Cody was negligent in maintaining the electrical system in the building and that this negligence was the proximate cause of the fire. On December 20, 1983, plaintiff moved to amend the complaint and to join the State of Vermont as an additional party. The motions were granted on January 17, 1984. On January 30, 1984, a summons was issued, and on January 31, 1984, the sum-

mons and amended complaint were served on the Attorney General of the State of Vermont at his offices in Montpelier.

The State of Vermont answered the amended complaint and asserted the affirmative defense of the statute of limitations. See V.R.C.P. 8(c); 12 V.S.A. § 512 (actions for injuries to persons or property "shall be commenced within three years after the cause of action accrues, and not after"). The State then moved for summary judgment on the ground that the action was time-barred by the statute of limitations, and the trial court granted the motion on August 13, 1986. See V.R.C.P. 56(b).

Plaintiff's theory at trial was that the fire was caused by arcing within electrical wiring in the space plaintiff leased. The theory was that the wire was coated with a rubber insulation, that the wire was very old, that the insulation had become brittle and unsafe, and that the aging of the insulation exposed bare copper wire to the metal conduit through which the wire ran. This exposure in turn caused an electrical arc and the fire. The jury also heard testimony that arcing often occurs if the electrical power remains on during a fire, and, for this reason, it was impossible to say what caused the fire.

The jury trial resulted in a verdict for Cody. The jury answered "no" when asked by special interrogatory: "Are you able to determine the probable origin of the fire?" The instructions specified that if the jury could not determine the cause of the fire, it was to render a defendant's verdict. Plaintiff's motion for a new trial was denied, and this appeal followed.

Plaintiff's first argument is that the trial court's actions during rebuttal argument denied plaintiff a fair and impartial trial, and therefore reversal of the jury's verdict is required. The action of the trial court in issue came in response to an objection to plaintiff's closing argument. Plaintiff had argued in closing that defendant Cody was negligent in failing to follow up with a wiring inspection when fuses blew in the line to the State liquor store. Cody responded by arguing that the fuses were in a different circuit, and therefore the cause of the blown fuses could not also be the cause of the fire. Plaintiff responded in rebuttal that Cody's electrician had testified that the circuits involved

were interconnected. Cody's counsel objected to this rebuttal argument claiming it was not supported by the evidence. Before the trial court ruled, it engaged in the following colloquy with plaintiff's counsel:

The Court: Mr. Davis, I don't recall—

Mr. Davis: I will read it.

The Court: I think you better because that's not my memory. I think that's so far off that I have to—

Mr. Davis: Well, I'm going to read it.

The Court: Go ahead.

After plaintiff's counsel read extensively from the transcript and resumed arguing, Cody again objected on the same ground. An exchange between counsel occurred, and the court intervened, ruling that plaintiff's counsel could "finish his argument." The court then initiated the following discussion:

The Court: I understand what you're referring to here is not—are you claiming that the two meters came from the upper box there where the fuses that we've been talking about were? . . . .

Mr. Davis: No. No. I'm saying the power went up through there, your Honor. That's what I'm saying.

The Court: Are you saying that the liquor store line, the "L.Q." box was wired in above the 400 box somewhere in there?

Mr. Davis: Yes, sir. That's what Mr. Brimblecomb said.

The Court: I beg to differ with you. That's not what that says.

Mr. Davis: I have to disagree with the Court, if I may, just for a moment, and point out that Mr. Brimblecomb drew a plan which is their—one of his exhibits. . . . Showing a line back there.

The Court: Where do you say the "L.Q." box is wired to?

Mr. Davis: It's wired to this meter.

The Court: Where does the meter get its source of power?

Mr. Davis: We don't know unless it comes out right here somehow. There's nothing that comes out of the 800 or 400.

The Court: Do you have any record in this case that that meter has its source of electricity up in the 200, 100 box?

Mr. Davis: All of the electricity for the whole building, meaning the so-called liquor store building, if I can describe it that way, and not the so-called Gleason building, because that had all separate circuits. Was powered through here.[sic].

The Court: Okay. I do not understand the evidence that way. I'll let you finish your argument. And Ms. Helling will have a chance to answer that. . . . I'll let her address that. We'll leave it to the jury to decide which version.

Plaintiff argues that the expressions of opinion in the above statements of the court deprived it of a fair trial. Cody responds that the court did not commit error but even if it did, the error is not grounds for reversal because it was harmless in view of the eventual verdict of the jury and it was not preserved for review. We find that the court's statements were not error and do not reach Cody's other arguments.

Every litigant is entitled to a fair trial, free from the suspicion of partiality. See *Auger v. Auger*, 149 Vt. 559, 561, 546 A.2d 1373, 1374 (1988). Thus, in *Auger*, we reversed where the court below assumed the active interrogation of witnesses and took over control of presentation of the evidence. Similarly, in *Ricci v. Bove's Admr.*, 116 Vt. 406, 411, 78 A.2d 13, 18 (1951), this Court noted that "under § 28 of our constitution every person is entitled by law not only to a fair trial of his case, but to one free as may be from suspicion of partiality." Based on this principle, we held that a judge who could not conduct an impartial hearing in a case must be disqualified. *Id.* at 410, 78 A.2d at 17.

We cannot agree that these principles were violated in this case. At the most, the trial judge's statements were comments on the weight of plaintiff's evidence. We have consistently held that such comments are proper as long as the ultimate question of the weight of the evidence is left to the jury. The general rule was stated in *Seviour's Admr. v. Rutland R.R.*, 88 Vt. 107, 110, 91 A. 1039, 1040 (1914), as follows:

> There is no legislative provision or judicial holding in this State that bars the court from expressing its opinion regarding the evidence and the weight of the evidence. The right is seldom exercised, but its existence remains unquestioned. The expression must, however, be fair and reasonable, and be accompanied by instructions which plainly leave the determination with the jury.

See also *State v. Malnati*, 109 Vt. 429, 433, 199 A. 249, 250–51 (1938) (no error in trial judge's statement of opinion that there was perjury in the case where the decision and the evaluation of the credibility of witnesses was left to the jury); *Foss v. Sherwood*, 104 Vt. 141, 147, 157 A. 834, 836 (1932).

The trial court acted within its discretion. It made clear in the challenged statements that the question of whether the evidence supported plaintiff's argument was left to the jury. During the charge, the trial judge stated that the jury was the exclusive judge of the facts and added "[n]either I nor anyone else may invade your province." The judge went on to state:

> You must not infer from any ruling that I've made or from anything that I've said during the course of the trial that I hold any views for or against either of the parties to this lawsuit. Even if I did, any views of mine would be totally irrelevant, since it's your recollection of the evidence and your determination of the issues of fact which control.

By these instructions, the trial court left the ultimate determination of all issues of fact to the jury.

The judge's comments were also fair and reasonable. He was trying to understand plaintiff's claim for the electrician's testimony. If the testimony supported plaintiff's position, it was only by implication. It was proper for the court to indicate that it did not see how the testimony supported plaintiff's position and to ask questions about it in the course of ruling on the objection.

■ We need not address plaintiff's second claim that the court committed error in not charging that electricity is a dangerous agency. Plaintiff made this argument conditional on the grant of a new trial on its first argument in order to clarify the

issue for retrial. The jury's decision that it could not determine the cause of the fire renders harmless any error relating to the standard of care applicable to Cody. Since there will not be a retrial against Cody, there is no reason to reach the issue.

Plaintiff's third argument relates to the grant of summary judgment for the State. Plaintiff's argument has two parts: (1) plaintiff filed its complaint against the State within the statute of limitations on December 20, 1983 and that date controls even though the court granted the motion to allow joinder of the State almost a month later; and (2) even if the filing occurred when the court granted the motion to join the State, the time relates back under V.R.C.P. 15(c) to when the original complaint against Cody was filed, well within the limitation period. On the first part of the argument, defendant State asserts that even if December 20, 1983 is to be considered the date of filing, a point the State vigorously resists, plaintiff lost the benefit of this date by failing to serve the State within thirty days as required by V.R.C.P. 3. The trial court only briefly addressed the first part of plaintiff's argument by holding that the complaint was filed on January 17, 1984 when the court granted the motion to amend the complaint and add the State as a party defendant.

The parties agree that 12 V.S.A. § 512(5) is the appropriate statute of limitations in this case. That statute requires that an action be "commenced" within three years after the cause of action accrues. The parties also agree that the cause of action accrued on December 20, 1980 and, therefore, the action had to be commenced by December 20, 1983. On that date, plaintiff filed the motion to add the State as a party along with the complaint plaintiff would serve on the State if the motion were granted. The first question we must address is whether that filing was sufficient to commence the action against the State for purposes of 12 V.S.A. § 512(5).

■ The state and federal courts that have confronted this question have held that an action against a new party, brought in through amendment to a preexisting complaint, is commenced when the motion to amend, and the new complaint, is filed even though permission to make the amendment is given

at a later date. See *Mayes v. AT&T Information Systems*, 867 F.2d 1172, 1173 (8th Cir. 1989); *Wallace v. Sherwin Williams Co.*, 720 F. Supp. 158, 159 (D. Kan. 1988); *Gloster v. Pennsylvania R.R.*, 214 F. Supp. 207, 208 (W.D. Pa. 1963); *Moore v. Flower*, 108 Mich. App. 214, 217, 310 N.W.2d 336, 337 (1981), *remanded*, 414 Mich. 897, 898, 323 N.W.2d 6, 6, *on remand*, 121 Mich. App. 235, 237–38, 329 N.W.2d 35, 36 (1982); *Charlton v. M.P. Industries, Inc.*, 314 S.E.2d 416, 419–20 (W. Va. 1984). The rationale is explained in *Gloster v. Pennsylvania R.R.* as follows:

> To give sanction to objections to the amendment, that leave to amend must await the actual placement of a judge's signature on an order to amend, would be to lend impracticality and injustice to federal judicial processes and procedure. This case is an example. . . . The Court had need for researching and deliberating upon the law as applied to the facts of the case, and this had to be done while applying time and energy to the many other matters in a busy court. The necessary time so consumed . . . should not and cannot be permitted as an obstacle to justice. Such is the intendment and spirit of the Federal Rules of Civil Procedure.

214 F. Supp. at 208. We concur with the analysis of the court in *Gloster.* If the date of commencement is based on when the court grants the motion to amend rather than when the plaintiff files the motion and proposed complaint, the plaintiff is left with uncertainty over whether the statute of limitation requirements will be met. The matter is out of the hands of the plaintiff and is controlled by the vagaries of the court's workload. The better rule is that the action is commenced when the plaintiff files the motion to amend *and* the proposed complaint irrespective of when the court grants the motion to amend. In this case, the action was commenced on December 20, 1983.

Defendant argues that even if the date of commencement was December 20, 1983, plaintiff lost the advantage of this date by failing to serve the State within thirty days as required by V.R.C.P. 3. By this argument, defendant is attempting to obtain the benefit of the holding in *Weisburgh v. McClure Newspapers, Inc.*, 136 Vt. 594, 595, 396 A.2d 1388, 1389 (1979), that the filing

of a complaint tolls the statute of limitations only if timely service under the Rules of Civil Procedure is accomplished. This is, however, a misuse of *Weisburgh.*

V.R.C.P. 3, as it existed when this action was commenced in the trial court, required service "within 30 days after the filing of the complaint." Defendant's theory is that the filing must have occurred on December 20, 1983, when the proposed complaint and the motion were filed in the trial court, since as decided above the action against the State was commenced on that date. Thus, defendant argues that plaintiff had to serve the State by January 20, 1984, and it failed to do so since service did not occur until January 31, 1984. In defendant's view, the action commenced on December 20, 1983 must be dismissed and cannot act to place plaintiff within the limitations period.

■ Defendant's theory confuses the date of commencement of an action for statute of limitations purposes with the date of filing for purposes of V.R.C.P. 3. It would lead to the absurd result that if the court took longer than thirty days to act on the motion to amend, the plaintiff would be unable to serve the complaint. A more reasonable construction of the rule establishes the date of filing for purposes of V.R.C.P. 3 as the date the court grants the motion allowing plaintiff to amend its complaint and add a party defendant. There is no reason that this date must be the same as the date of commencement for purposes of the statute of limitation. In this case, the court granted the motion to amend on January 17, 1984, and plaintiff served the complaint well within thirty days thereafter. The amended complaint is not subject to dismissal for tardy service.

■ Because we hold that plaintiff commenced its action against the State of Vermont within the limitation period, we do not reach its relation back argument.

*The judgment for defendant Cody Enterprises, Inc. is affirmed. The judgment for defendant State of Vermont is reversed.*