ATTORNEYS FOR APPELLANT

Eric S. Pavlack
Colin E. Flora
Pavlack Law, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Kimberly E. Howard
Smith Fisher Maas Howard &
Lloyd, P.C.
Indianapolis, Indiana

Nathaniel Lampley, Jr.
Victor A. Walton, Jr.
Jacob D. Mahle
Jeffrey A. Miller
Vorys, Sater, Seymour
and Pease LLP
Cincinnati, Ohio



IN THE

# COURT OF APPEALS OF INDIANA

The State of Indiana, ex rel.
Harmeyer,

*Appellant-Plaintiff and Relator,*

v.

The Kroger Co., Kroger Limited
Partnership I, KRGP, Inc.,
Payless Super Markets, Inc., and
Ralphs Grocery Company,

*Appellees-Defendants*

November 9, 2018

Court of Appeals Case No.
18A-PL-806

Appeal from the Marion Superior
Court

The Honorable John M.T. Chavis,
II, Judge

Trial Court Cause No.
49D05-1405-PL-16895

**Baker, Judge.**

[1] Michael Harmeyer filed a complaint against several grocery stores that operate in Indiana—The Kroger Company; Kroger Limited Partnership I; KRGP, Inc.; Pay Less Super Markets, Inc.; and Ralphs Grocery Company (collectively, the Appellees)—alleging that they violated Indiana's False Claims and Whistleblower Protection Act (the FCA).[1] The Appellees moved to dismiss Harmeyer's complaint, arguing that it did not meet the specificity requirements of Indiana Trial Rule 9(B), which governs fraud claims. The trial court granted the motion and dismissed the complaint. Harmeyer appeals, arguing that the trial court erred in its analysis of Rule 9(B). Finding no error, we affirm.

## Facts

[2] The FCA is an anti-fraud statute that permits citizens (called "relators") to bring fraud claims on behalf of the State. The FCA rewards relators who come forward with information about fraud by giving them a percentage of the recovery. The statute allows for statutory penalties and treble damages, meaning that the relator's recovery can be substantial. The FCA also allows the state attorney general and inspector general to intervene in a relator's case; if they decide not to do so, the relator may pursue it on his own.

---

[1] Ind. Code ch. 5-11-5.5.

[3]     In this case, Harmeyer (Relator) filed a complaint under the FCA against the Appellees. Because the Appellees conduct retail sales in Indiana, they are subject to statutory duties to collect Indiana's seven percent sales tax on certain items.[2] Items classified as "food and food ingredients for human consumption" are exempt from Indiana's sales tax, while other items, including candy, soft drinks, prepared food, and dietary supplements are taxed at the seven percent rate.[3] Generally, retail businesses like the Appellees are required to file monthly sales tax returns and remit the tax to the State no later than twenty days after the end of each month.[4] These businesses submit an electronic form called an ST-103, which states their total sales, exempt sales, taxable sales, and total sales tax due.

[4]     From approximately April 29, 2014, through approximately July 30, 2016, Relator went on a spending spree, purchasing items from the Appellees' Indiana stores and recording those that he claims should have been subject to sales tax but that were not taxed. He also documented items from these stores that were properly taxed or untaxed. During this same time period, Relator also shopped at competing stores, buying the same or similar items, and recording items considered to be properly taxed or properly untaxed. Relator's list of what he considers improperly untaxed items includes approximately

---

[2] Ind. Code § 6-2.5-2-2(a).

[3] I.C. § 6-2.5-5-20.

[4] I.C. § 6-2.5-6-1(a).

1,400 purchases from various grocery stores; many of the items are variations of certain products. For example, 131 items on the list are nuts that Relator alleges should have been classified as candy and therefore taxed; in another example, 51 items on the list are kinds of popcorn that Relator alleges should have been classified as candy and therefore taxed.

[5] On January 3, 2017, Relator filed his sixth amended complaint under the FCA, alleging that the Appellees failed to properly collect and remit sales tax to the State of Indiana on candy, soft drinks, prepared food, and dietary supplements. He attached to his complaint the fruits of his labor, which was a list of purchased items and copies of receipts and photographs of twenty-five of his purchases. As required by the FCA, Relator served the Indiana Attorney General and Inspector General with a copy of his complaint and a written disclosure describing the relevant material evidence he possessed; they declined to intervene in the action. On July 13, 2017, the Appellees filed a motion to dismiss Relator's complaint, alleging that the complaint failed to plead fraud with the specificity required by Indiana Trial Rule 9(B) and that Relator had therefore failed to state a claim under Indiana Trial Rule 12(B)(6). On October 19, 2017, a hearing took place, and on March 22, 2018, the trial court granted the Appellees' motion, agreeing with both of their arguments and dismissing the complaint with prejudice. Relator now appeals.

# Discussion and Decision

Relator raises two arguments on appeal, which we consolidate and restate as whether the trial court erred by dismissing his complaint. A Trial Rule 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim, not the facts supporting it. *K.M.K. v. A.K.*, 908 N.E.2d 658, 662 (Ind. Ct. App. 2009). Therefore, we view the complaint in the light most favorable to the non-moving party, drawing every reasonable inference in favor of this party. *Id.* In reviewing a ruling on a motion to dismiss, we stand in the shoes of the trial court and must determine whether the trial court erred in its application of the law. *Id.* The trial court's grant of the motion to dismiss is proper if it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances. *Id.* Further, in determining whether any facts will support the claim, we look only to the complaint and may not resort to any other evidence in the record. *Id.*

## I. False Claims Act

The FCA requires the relator to serve a copy of the complaint and a written disclosure that describes all relevant material evidence and information the relator possesses on Indiana's attorney general and inspector general. I.C. § 5-11-5.5-4(c). The State has 120 days in which to decide whether it will intervene and proceed with the action. *Id.* If the State decides not to intervene, the relator may serve the complaint on the defendant. *Id.* at -(e)(2).

[8] Indiana Code section 5-11-5.5-2 governs the type of fraudulent conduct that falls under the FCA. This section provides in relevant part that

> (b) A person who knowingly or intentionally:
>
> ***
>
> > (6) makes or uses a false record or statement to avoid an obligation to pay or transmit property to the state;
>
> ***
>
> > is, except as provided in subsection (c), liable to the state for a civil penalty of at least five thousand dollars ($5,000) and for up to three (3) times the amount of damages sustained by the state. In addition, a person who violates this section is liable to the state for the costs of a civil action brought to recover a penalty or damages.

I.C. § 5-11-5.5-2(b).

[9] The substance of this section corresponds to the substance of its federal counterpart.[5] Without any Indiana precedent addressing the FCA, we may look to the federal courts for guidance on interpreting the statute. *See Ind. Civil Rights Comm'n v. Sutherland Lumber*, 182 Ind. App. 133, 140, 394 N.E.2d 949,

---

[5] 31 U.S.C. § 3729(a)(1).

954 (1979) (where federal and state statutory language is the same or similar, federal decisions may be persuasive authority that a court may consider).

## II. Trial Rule 9(B)

Here, Relator alleges that the Appellees made or used, or caused another person to make or use, false records or statements to avoid their obligation to pay or transmit sales tax on their taxable sales to Indiana. This allegation falls under the FCA. I.C. § 5-11-5.5-2(b)(6). The Southern District of Indiana has explained that claims under the federal FCA sound in fraud. *U.S. ex rel. Kietzman v. Bethany Circle of King's Daughters of Madison, Ind., Inc.*, 305 F. Supp. 3d 964, 973 (S.D. Ind. 2018). Therefore, "the circumstances alleged to constitute the fraud must be pleaded with particularity." *Id.*

While our rules of trial procedure generally require only notice pleading, Indiana Trial Rule 9(B) provides an exception for complaints alleging fraud. *Dutton v. Int'l Harvester Co.*, 504 N.E.2d 313, 318 (Ind. Ct. App. 1987). Rule 9(B) requires that in such pleadings, "the circumstances constituting the fraud . . . shall be specifically averred." Our Supreme Court has explained that those circumstances "include the time, the place, the substance of the false representations, the facts misrepresented, and the identification of what was procured by fraud." *Cont'l Basketball Ass'n, Inc. v. Ellenstein Enterprises, Inc.*, 669 N.E.2d 134, 138 (Ind. 1996). Failure to comply with Rule 9(B)'s specificity requirements constitutes a failure to state a claim upon which relief may be granted; thus, any pleading that fails to satisfy the requirements fails to raise an

issue of material fact. *Kapoor v. Dybwad*, 49 N.E.3d 108, 132 (Ind. Ct. App. 2015).

[12] Like its federal counterpart, Rule 9(B) serves to deter groundless suits and provide defendants with sufficient information to enable them to prepare a defense. *McKinney v. State*, 693 N.E.2d 65, 72 (Ind. 1998); *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). Regarding Trial Rule 9(B), this Court noted the Seventh Circuit's explanation that

> [w]e have read this rule to require describing the who, what, when, where, and how of the fraud. We have noted that the purpose of this particularity requirement is to discourage a "sue first, ask questions later" philosophy. Heightened pleading in the fraud context is required in part because of the potential stigmatic injury that comes with alleging fraud and the concomitant desire to ensure that such fraught allegations are not lightly leveled. We have also cautioned, however, that the exact level of particularity that is required will necessarily differ based on the facts of the case.
>
> . . . . [W]hile we require a plaintiff claiming fraud to fill in a fairly specific picture of the allegations in her complaint, we remain sensitive to information asymmetries that may prevent a plaintiff from offering more detail.

*Kapoor*, 49 N.E.3d at 132 (quoting *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013)) (some internal quotation marks and citations omitted).

[13] The Seventh Circuit has also noted that "because courts and litigants often erroneously take an overly rigid view of the formulation, we have also observed that the requisite information—what gets included in that first paragraph—may

vary on the facts of a given case." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011). A plaintiff alleging fraud cannot rely solely on "information and belief" unless the facts constituting the fraud are not accessible to the plaintiff and the plaintiff provides the grounds for his suspicions. *Id.* at 443.

# III. Application

Relator's appeal centers on his argument that the trial court erred by applying the federal, rather than the state, standard for Trial Rule 9(B) and that had the trial court applied the correct standard, his complaint would have passed muster.

It is true that the trial court analyzed Relator's complaint using the language of the federal standard, considering the "who, what, when, where, and how" of the alleged fraud. Although Relator contends that this standard differs from the standard defined in *Continental Basketball*, we find any difference between the two merely a matter of semantics. Indeed, not only has this Court referenced the federal language, *see Kapoor*, 49 N.E.3d at 132, but our Supreme Court has applied a framework nearly identical to it on at least one occasion. When analyzing a pleading under Indiana's Deceptive Consumer Sales Act, our Supreme Court found that the complaint and attached affidavits did "not state with specificity what the representations were, who made them, or when or where they were made. Most importantly, in most cases they do not plead what the statements were that were false, and in what respect they were false."

*McKinney*, 693 N.E.2d at 73. In other words, our Supreme Court considered whether the pleading specifically alleged the who, what, when, where, and how of the alleged fraud. Accordingly, here, we find no error with the trial court's use of the "who, what, when, where, and how" framework.

[16] Moreover, Indiana's Rule 9(B) is nearly identical to and serves the same objectives as its federal counterpart; Indiana's FCA is likewise substantially similar to its federal counterpart. Where a state trial rule is patterned after a federal rule, we will often look to the authorities on the federal rule for aid in construing the state rule. *Cleveland Range, LLC v. Lincoln Fort Wayne Assocs., LLC*, 43 N.E.3d 622, 624 n.1 (Ind. Ct. App. 2015). And where federal and state statutory language is the same or similar, as it is here, federal decisions may be persuasive authority and a court may give careful consideration to such decisions even though they are not binding. *Sutherland Lumber*, 182 Ind. App. at 140, 394 N.E.2d at 954. Accordingly, we find no error with the trial court's reliance on the "who, what, where, when, and how" framework or on federal caselaw in general.

[17] We agree with the trial court that Relator's complaint did not meet the specificity requirement of Rule 9(B). Regarding the time of the fraud, for example, the trial court found that

> . . . Relator argues that Indiana's sales tax statute requires that sales tax returns be "no later than 20 days after the end of the month." It is not enough to suggest intervals at which false statements may have been made; Relator was required to plead actual dates with false statements were made.

Appealed Order p. 6 (footnote and citation omitted). Relator attached dated receipts to his complaint to show that the Appellees did not tax items that should have been taxed. Relator contends that, to determine the time of the fraud, under Indiana Code section 6-2.5-6-1, we simply need to add twenty days to the last day of the month in which the untaxed transactions occurred. Rather than allege when the Appellees submitted fraudulent information to the State, Relator's complaint invites the Appellees to determine on their own exactly when they may have submitted such forms to the State. Trial Rule 9(B) requires a party to plead the time of the fraud. Suggesting a method of calculating the date of the fraud is simply not the same, or sufficient, for Rule 9(B), nor does it provide defendants with sufficient information to enable them to prepare a defense.

[18] Relator insists that averring the time of the fraud is a low hurdle. We disagree for two reasons. First, Trial Rule 9(F) provides that

> [f]or the purpose of testing the sufficiency of a pleading, averments of time and place are material and shall be considered like all other averments of material matter. However, time and place need be stated only with such specificity as will enable the opposing party to prepare his defense.

Thus, averring the time of the fraud is not a low hurdle, but rather requires the same level of specificity as any other element required for a fraud allegation. Second, Relator relies on *Ohio Farmers Ins. Co. v. Indiana Drywall & Acoustics, Inc.*, to support his assertion, but we find that case distinguishable. 970 N.E.2d 674 (Ind. Ct. App.), *trans. granted, opinion vacated*, 976 N.E.2d 1234 (Ind. 2012),

*vacated*, 981 N.E.2d 548 (Ind. 2013), and *opinion reinstated*, 981 N.E.2d 548 (Ind. 2013). In that case, this Court found that the plaintiff specifically pleaded the time and place of the fraud in an exhibit that was attached to the complaint, while the remaining requirements of Rule 9(B) were specifically alleged within the complaint itself. *Id.* at 684. The attached exhibit was a dated contract that contained the statement that was alleged to be fraudulent. In other words, the attached exhibit clearly documented the date on which the alleged fraudulent statement occurred. Here, however, Relator's Exhibit A provides only the dates on which Relator purchased certain items from the Appellees; unlike in *Indiana Drywall*, he includes no documentation of the Appellees' alleged fraudulent statements. Relator's complaint, therefore, did not meet the first requirement that our Supreme Court outlined for Rule 9(B).[6]

[19] Because we find that Relator did not particularly plead the time of the alleged fraud as required by Trial Rule 9(B), we need not address the other elements required for a pleading of fraud. But we will still briefly address another of Relator's points: that the trial court applied a pleading standard to his complaint that "effectively guarantee[d] dismissal of meritorious claims before the case's merits [could] be addressed." Appellant's Br. p. 8. According to Relator, the trial court required him to plead information that is solely within

---

[6] In addition, Relator alleges that "[u]pon information and belief, Kroger's fraudulent conduct began in May 2008 or earlier, is ongoing as of the date this Sixth Amended Complaint was filed, and unless remedied, continues to the date of trial." Appellant's App. Vol. II p. 51. This inexplicably expanded time frame is far too vague and unsupported to meet Rule 9(B)'s specificity requirement.

the Appellees' knowledge, and that in such circumstances, the Seventh Circuit provides that the pleading standards should be relaxed. It is true that a court may consider "'information asymmetries that may prevent a plaintiff from offering more detail.'" *Kapoor*, 49 N.E.3d at 132 (quoting *Beyrer*, 722 F.3d at 948). But at the same time, a plaintiff claiming fraud must "'fill in a fairly specific picture of the allegations'" in the complaint, *id.*, because Rule 9(B) requires "some . . . means of injecting precision and some measure of substantiation," *Kietzman*, 305 F. Supp. 3d at 974 (quotation marks and citation omitted).

[20] Here, Relator only offers select receipts of items he purchased and a list of other items that he purchased—which identifies the name of the stores where he made the purchase but not the stores' locations—to substantiate his claim that the Appellees made or used false records or statements to avoid their obligation to pay or transmit sales tax on taxable sales to Indiana. He alleges that the Appellees' fraudulent statements were contained in forms that they submitted to the State, but Relator cannot say when those forms were submitted or what information they contain. He can only speculate. Relator further alleges on information and belief that the Appellees' alleged fraud began six years before he began his investigation and continues indefinitely into the future and took place at *all* of the Appellees's stores. In other words, Relator's complaint simply infers from his purchases that the Appellees have engaged in widespread fraudulent conduct and will continue to do so at the expense of the State of Indiana. Even if we were to relax the Rule 9(B) pleading standards, Relator's

complaint simply does not provide a sufficiently specific picture of the allegations, nor does it substantiate his inference that the Appellees violated the FCA.

[21] In sum, we find that the trial court did not err by finding that Relator's complaint did not meet the requirements of Trial Rule 9(B) and by granting the Appellees' motion to dismiss.[7]

[22] The judgment of the trial court is affirmed.

Robb, J., and Pyle, J., concur.

---

[7] Relator also argued that the trial court erred by concluding that no factual basis existed regarding whether the Appellees acted knowingly when they did not collect sales tax for certain items. Because we find that Relator did not meet the requirements of Rule 9(B), we need not address this second issue.