

FILED

May 12 2023, 8:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher S. Wolcott
The Wolcott Law Firm LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE –
ICE MILLER LLC

Daniel D. Trachtman
Daniel R. Kelley
Dinsmore & Shohl LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE –
OLD NATIONAL BANCORP

Lucy R. Dollens
Sarah Thompson Parks
Quarles & Brady LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE –
BMO HARRIS BANK N.A.

Anna-Katrina S. Christakis
James J. Morrissey
Pilgrim Christakis LLP
Chicago, Illinois

ATTORNEYS FOR APPELLEE –
FIFTH THIRD BANK, INDIANA

Jordan T. Steiner
Victor A. Walton
Wesley R. Abrams
Vorys, Sater, Seymour and Pease
LLP
Cincinnati, Ohio

ATTORNEYS FOR APPELLEE – JP
MORGAN CHASE BANK, N.A.

Jayna M. Cacioppo
Nadine E. McSpadden

Taft Stettinius & Hollister LLP
Indianapolis, Indiana

Matthew J. Cannon
David S. Repking
Greenberg Traurig, LLP
Chicago, Illinois

ATTORNEYS FOR APPELLEE –
PNC BANK NA

Robert D. MacGill
Matthew T. Ciulla
MacGill PC
Indianapolis, Indiana

Robert J. Conlan
Frank R. Volpe
Sidley Austin LLP
Washington, DC

ATTORNEYS FOR APPELLEE –
BANK OF NEW YORK MELLON

J. Richard Kiefer
Gregory A. Neibarger
Joshua J. Burress
Dentons Bingham Greenbaum
LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE –
WELLS FARGO BANK N.A.

Sally Franklin Zweig
Kristopher N. Kazmierczak
Diana Brooke Smith
Stoll Keenon Ogden PLLC
Indianapolis, Indiana

Stacie Knight
Winston & Strawn, LLP
Charlotte, North Carolina

ATTORNEYS FOR APPELLEE –
HUNTINGTON NATIONAL BANK

Daniel E. Pulliam
Daniel R. Roy
Susanne A. Johnson
Faegre Drinker Biddle & Reath
LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE –
PUBLIC TRUST ADVISORS LLC

Mary Katherine Hetzel
Dinsmore & Shohl LLP
Indianapolis, Indiana

Patrick M. Hagan
Dinsmore & Shohl LLP
Cincinnati, Ohio

ATTORNEYS FOR APPELLEES –
KELLY MITCHELL, JILLEAN
BATTLE, RYAN LOCKE,
MICHAEL FRICK, KIMBERLY
LOGAN, AND CYNTHIA BARGER

James J. Ammeen
Mark J. Liechty
Ammeen Valenzuela Assoc. LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

State of Indiana, *ex rel.* James Holden,

*Appellant-Plaintiff,*

v.

Ice Miller, LLC, Old National Bancorp, BMO Harris Bank, N.A., Fifth Third Bank, Indiana, JP Morgan Chase Bank, N.A., PNC Bank, N.A., Bank of New York Mellon Corp., Wells Fargo Bank, N.A., Huntington National Bank, Public Trust Advisors, LLC, Kelly Mitchell, in her individual capacity, Jillean Battle, in her individual capacity, Caitlin Larson, in her individual capacity, Ryan Locke, in his individual capacity, Michael Frick, in his individual capacity, Kimberly Logan, in her individual capacity, and Cynthia Barger, in her individual capacity,

*Appellees-Defendants.*

May 12, 2023

Court of Appeals Case No. 22A-PL-2760

Appeal from the Marion Superior Court

The Honorable John M.T. Chavis, II, Judge

Trial Court Cause No. 49D05-2007-PL-22005

**Opinion by Judge Tavitas**
Judges Weissmann and Foley concur.

**Tavitas, Judge.**

# Case Summary

[1] James Holden ("Relator") appeals the trial court's dismissal of his qui tam claims brought under the Indiana False Claims and Whistleblower Protection Act ("IFCA"), Indiana Code Chapter 5-11-5.5. Relator, a former employee of the Indiana Treasurer of State ("Treasurer"), claims that Treasurer Kelly Mitchell and members of her staff ("Individual Defendants")[1] conspired with a law firm, several banks, and an investment advisory firm ("Business Defendants")[2] to award state contracts that were not approved under the Financial Reorganization Act ("FRA"), Indiana Code Chapter 4-13-2.

[2] The trial court dismissed Relator's complaint pursuant to Indiana Trial Rule 12(B)(1) and Trial Rule 12(B)(6). The trial court found, in part, that it lacked jurisdiction to hear Relator's action because the action was based upon information learned in a deposition and upon the Treasurer's written responses to a public records act request. On appeal, we address one dispositive issue— whether the trial court properly dismissed the action pursuant to the public disclosure bar provisions of Indiana Code Section 5-11-5.5-7(f). We conclude that the trial court properly dismissed the action but should have dismissed the

---

[1] These staff members include Jillean Battle, Caitlin Larson, Ryan Locke, Michael Frick, Kimberly Logan, and Cynthia Barger.

[2] These defendants include Ice Miller LLC, Old National Bank, BMO Harris Bank N.A., Fifth Third Bank, Indiana, JP Morgan Chase Bank N.A., PNC Bank N.A., Bank of New York Mellon Corporation, Wells Fargo Bank N.A., Huntington National Bank, and Public Trust Advisors LLC.

action under Indiana Trial Rule 12(B)(6) rather than Trial Rule 12(B)(1). Accordingly, we affirm in part, reverse in part, and remand.

## Issue

Relator raises two issues, which we consolidate and restate as whether the trial court properly dismissed Relator's complaint.

## Facts

Relator was employed as Chief Deputy Treasurer and General Counsel by the Treasurer from January 2007 to June 2011 and from November 2012 to November 2013. Kelly Mitchell became the Treasurer on November 18, 2014, and terminated Relator's employment. In March 2015, Relator filed a complaint against the Treasurer and Mitchell as a result of his termination. During the course of discovery, Relator obtained a copy of an agreement between the Treasurer and Ice Miller. During a deposition, Mitchell confirmed that the agreement was not signed by the State Budget Agency, the Indiana Department of Administration, and the Indiana Attorney General's Office pursuant to Indiana Code Section 4-13-2-14.1(a) of the FRA. This litigation was settled in August 2017.

Mitchell was re-elected as Treasurer in November 2018. In 2019, Holden checked the Indiana Transparency Portal website to review contracts the Treasurer had submitted for approval by the State Budget Agency, the Indiana Department of Administration, and the Indiana Attorney General's Office, and he found no such contracts on the Transparency Portal. Holden then sent

requests under the Indiana Access to Public Records Act, Indiana Code Chapter 5-14-3, to the Treasurer to obtain a copies of all contracts executed during Mitchell's term as Treasurer, and Holden received multiple responses to his requests. According to Relator, "[t]hese documents showed that during Defendant Mitchell's time in office, the [Treasurer] has approved numerous contracts worth millions of dollars, mostly to Defendant Mitchell's campaign donors and supporters, without obtaining the approval of the State Budget Agency, the Indiana Department of Administration and the Indiana Attorney General's Office, as required by Ind. Code § 4-13-2-14.1(a)." Appellant's App. Vol. II p. 58.

[6] In July 2020, Relator filed a complaint under seal and alleged that the Treasurer and Individual Defendants conspired with the Business Defendants to award the Business Defendant state contracts in violation of the FRA. In June 2021, the Indiana Attorney General and the Indiana Inspector General declined to intervene and prosecute the action. Relator then moved to unseal the action, which the trial court granted, and Relator served his complaint on the defendants.

[7] In December 2021, Relator amended his complaint to add allegations that the Individual Defendants had acted outside the scope of their employment and engaged in criminal conduct. The Individual Defendants filed a motion to dismiss Relator's amended complaint pursuant to Indiana Trial Rule 12(B)(1) and 12(B)(6), and the Business Defendants also filed a motion to dismiss Relator's amended complaint pursuant to Indiana Trial Rule 12(B)(1) and

12(B)(6). Some of the defendants then filed separate motions to dismiss and/or supplemental memorandums. After briefing was complete, the trial court held a hearing on the motions in July 2022.

[8] On October 19, 2022, the trial court granted the motions to dismiss. The trial court concluded, in part, that Relator's claims against all of the defendants failed as a matter of law because the trial court lacked "subject matter jurisdiction" pursuant to the "public disclosure bar" of Indiana Code Section 5-11-5.5-7(f) and *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401 (2011). Appellant's App. Vol. II p. 40. The trial court, thus, dismissed Relator's claims pursuant to Indiana Trial Rule 12(B)(1). The trial court also concluded, in part, that the Relator's claims failed because the Treasurer is not subject to the FRA "when conducting the State's banking business." *Id.* at 43. The trial court determined that the "underlying contracts" were valid "because they are within the statutory powers enjoined to" the Treasurer. *Id.* at 45. The trial court, thus, also dismissed Relator's claims pursuant to Indiana Trial Rule 12(B)(6). Relator now appeals.

## Discussion and Decision

[9] Relator appeals the trial court's dismissal of his amended complaint under Indiana Trial Rule 12(B)(1) and Rule 12(B)(6). Trial Rule 12(B)(1) allows dismissal for "[l]ack of jurisdiction over the subject matter." Ind. Trial Rule 12(B)(1). "In determining whether a court has subject-matter jurisdiction, we ask whether the action or claim falls within the general scope of authority conferred upon the court by the constitution or by statute." *Payne-Elliott v.*

*Roman Cath. Archdiocese of Indianapolis, Inc.*, 193 N.E.3d 1009, 1013 (Ind. 2022) (*citing State v. Reinhart*, 112 N.E.3d 705, 711-12 (Ind. 2018)).  Where the trial court ruled on a paper record, which it did here, "we review its factual findings as well as its legal conclusions de novo."  *Walczak v. Lab. Works-Ft. Wayne LLC*, 983 N.E.2d 1146, 1152 (Ind. 2013).

[10]     A Trial Rule 12(B)(6) motion, however, tests the legal sufficiency of the plaintiff's claim, not the facts supporting it.  *Payne-Elliott*, 193 N.E.3d at 1013 (citing *Bellwether Properties, LLC v. Duke Energy Ind., Inc.*, 87 N.E.3d 462, 466 (Ind. 2017)).  "Dismissal under 12(B)(6) is not proper 'unless it appears to a certainty on the face of the complaint that the complaining party is not entitled to any relief.'"  *Id.* (quoting *Bellwether Properties*, 87 N.E.3d at 466).  We review "a 12(B)(6) dismissal de novo, giving no deference to the trial court's decision."  *Bellwether Properties*, 87 N.E.3d at 466.  We take "the complaint's allegations as true and consider[] them in the light most favorable to the nonmoving party, drawing every reasonable inference in that party's favor."  *Payne-Elliott*, 193 N.E.3d at 1013.  "Dismissal under Rule 12(B)(6) is rarely appropriate when the asserted ground for dismissal is an affirmative defense; but where a plaintiff has pleaded himself out of court by alleging, and thus admitting, the essential elements of a defense, his complaint fails to state a claim on which relief can be granted."  *Id.*

[11]     Relator's claims were brought under the IFCA, which is similar to the federal False Claims Act ("FCA") statutes.  *See* Ind. Code ch. 5-11-5.5; 31 U.S.C. § 3729-33; *State ex rel. Harmeyer v. Kroger Co.*, 114 N.E.3d 488, 492 (Ind. Ct. App.

2018) (discussing the IFCA and noting that "[t]he substance of this section corresponds to the substance of its federal counterpart"), *trans. denied*. Under both statutes, citizens, referred to as "relators," may file qui tam[3] actions on behalf of the government. *United States ex rel. Uhlig v. Fluor Corp.*, 839 F.3d 628, 633 (7th Cir. 2016).

[12] The IFCA provides that:

> A person who knowingly or intentionally:
>
> (1) presents a false claim to the state for payment or approval; [or]
>
> * * * * *
>
> (7) conspires with another person to perform an act described in subdivisions (1) through (6);
>
> * * * * *
>
> is, except as provided in subsection (c), liable to the state for a civil penalty of at least five thousand dollars ($5,000) and for up to three (3) times the amount of damages sustained by the state. In addition, a person who violates this section is liable to the

---

[3] "Qui tam actions are those brought under a statute that allows a private person to sue for a penalty, a part of which the government or some specified public institution will receive. Thus, an action is called a qui tam action when the penalty is given in part to the one who brings it, and the remainder to the sovereign or other public use." 70 C.J.S. Penalties § 10 (footnote omitted).

state for the costs of a civil action brought to recover a penalty or damages.

Ind. Code § 5-11-5.5-2(b).

[13] A relator may bring a civil action under seal for a violation of Indiana Code Section 5-11-5.5-2(b). *See* I.C. § 5-11-5.5-4(a), 4(c). After a relator files a qui tam action under the IFCA, the Indiana Attorney General and Inspector General have the authority to "intervene in the case and proceed with the action." I.C. § 5-11-5.5-4(e)(1); I.C. § 5-11-5.5-3. If the Attorney General and Inspector General "elect not to proceed with the action, . . . the person who initially filed the complaint may proceed with the action." I.C. § 5-11-5.5-4(e)(2). If the action prevails, the person who initially filed the complaint is entitled to a percentage of the proceeds of the action or settlement. I.C. § 5-11-5.5-6. "[T]he relator's recovery can be substantial." *Harmeyer*, 114 N.E.3d at 490.

[14] Such actions, however, are subject to certain limitations. *See* I.C. § 5-11-5.5-7. At issue here is Indiana Code Section 5-11-5.5-7(f), which provides:

> A court does not have jurisdiction over an action brought under section 4 of this chapter if the action is based upon information contained in:
>
> (1) a transcript of a criminal, a civil, or an administrative hearing;
>
> (2) a legislative, an administrative, or another public report, hearing, audit, or investigation; or

(3) a news media report;

> unless the person bringing the action has direct and independent knowledge of the information that is the basis of the action, and the person bringing the action has voluntarily provided this information to the state.

[15] The trial court here found that Relator's action was based upon responses received through public records requests and through discovery in Relator's employment litigation against the Treasurer. The trial court concluded that "information learned in a deposition" and "the government's written responses to a public records act request" fell under the language of Indiana Code Section 5-11-5.5-7(f). Appellant's App. Vol. II p. 40, 40 n.6. Accordingly, the trial court found that it did not have "jurisdiction" and dismissed the action under Trial Rule 12(B)(1). *Id.* at 41.

[16] On appeal, Relator makes no argument regarding the information learned in the deposition. Relator, thus, has waived any argument that the information learned in Treasurer Mitchell's deposition did not fall under Indiana Code Section 5-11-5.5-7(f). Relator, however, argues that the information he learned in his public records act requests does not qualify as "a legislative, an administrative, or another public report, hearing, audit, or investigation." I.C. § 5-11-5.5-7(f)(2).

[17] Indiana courts have not interpreted the "legislative, an administrative, or another public report, hearing, audit, or investigation" language. I.C. § 5-11-5.5-7(f)(2). "Without any Indiana precedent addressing the [IFCA], we may

look to the federal courts for guidance on interpreting the statute." *Harmeyer*, 114 N.E.3d at 492 (citing *Ind. Civil Rights Comm'n v. Sutherland Lumber*, 182 Ind. App. 133, 140, 394 N.E.2d 949, 954 (1979)). Accordingly, we may look to the similar provisions of the federal FCA for guidance on interpreting this provision, which is commonly referred to as the "public disclosure" bar.

[18] The corresponding provision of the federal FCA was interpreted under similar circumstances in *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 131 S. Ct. 1885 (2011). There, the United States Supreme Court considered a suit brought under the FCA. Kirk brought a suit against his former employer and alleged that the former employer "had submitted hundreds of false claims for payment under its Government contracts." *Schindler Elevator*, 563 U.S. at 405, 131 S. Ct. at 1890. Kirk's action was based upon information that his wife received from the Department of Labor in response to three Freedom of Information Act ("FOIA") requests. The former employer moved to dismiss the action because it alleged that an agency's response to a FOIA request is barred by the public disclosure provisions of the FCA. The district court agreed and granted the motion to dismiss. The Court of Appeals for the Second Circuit vacated and remanded, and the United States Supreme Court granted certiorari.

The Supreme Court considered 31 U.S.C. § 3730(e)(4), which, at the time, provided:[4]

> (A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a **congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation**, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

> (B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

---

[4] The statute was revised in 2010 to eliminate the "jurisdiction" language and now provides:

(A) The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed--

(i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;

(ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or

(iii) from the news media,

unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

(B) For purposes of this paragraph, "original source" means an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

(Emphasis added).

[20] The Court analyzed the meaning of "report" and concluded that "[a] written agency response to a FOIA request falls within the ordinary meaning of 'report.'" *Id.* at 410, 131 S. Ct. at 1893. The Court then determined that "[t]he DOL's three written FOIA responses to Mrs. Kirk, along with their attached records, are thus reports within the meaning of the public disclosure bar." *Id.* at 411, 131 S. Ct. at 1893.

[21] In discussing the policy behind the public disclosure bar, the Court noted that "the public disclosure bar was 'an effort to strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits.'" *Id.* at 413, 131 S. Ct. at 1894 (quoting *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 294-95, 130 S. Ct. 1396, 140 (2010)).

> The sort of case that Kirk has brought seems to us a classic example of the "opportunistic" litigation that the public disclosure bar is designed to discourage. Although Kirk alleges that he became suspicious from his own experiences as a veteran working at Schindler, anyone could have filed the same FOIA requests and then filed the same suit. Similarly, anyone could identify a few regulatory filing and certification requirements, submit FOIA requests until he discovers a federal contractor who is out of compliance, and potentially reap a windfall in a qui tam action under the FCA.

*Id.*, 131 S. Ct. at 1894 (internal citations omitted).

[22] Relator, however, argues that we should not rely upon *Schindler Elevator* and, instead, we should rely upon the dissent in *Schindler Elevator*. We decline

Relator's invitation. Although the language in the FCA and IFCA is slightly different—"a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation" versus "a legislative, an administrative, or another public report, hearing, audit, or investigation"—the statutes serve the same purposes of encouraging persons to "root out fraud" while discouraging "opportunistic" litigation. *Id.* We find *Schindler Elevator* persuasive, and we conclude that the Treasurer's responses to Relator's Indiana Access to Public Records Act requests are "public reports." Anyone could have filed those same requests and then filed the same suit. Relator did not have "direct and independent knowledge" of the information. Accordingly, under Indiana Code Section 5-11-5.5-7(f), the trial court did not have "jurisdiction" over the action.

[23] Although not raised by the parties, we must note, however, that the term "jurisdiction" in the statute at issue here does not refer to subject matter jurisdiction. Trial courts possess two kinds of "jurisdiction"—subject matter jurisdiction and personal jurisdiction. *K.S. v. State*, 849 N.E.2d 538, 540 (Ind. 2006). "Subject matter jurisdiction refers to a court's constitutional or statutory power to hear and adjudicate a certain type of case." *D.P. v. State*, 151 N.E.3d 1210, 1213 (Ind. 2020). The trial court here had subject matter jurisdiction to hear a qui tam action. "Other phrases recently common to Indiana practice, like 'jurisdiction over a particular case,' confuse actual jurisdiction with legal error[.]" *K.S.*, 849 N.E.2d at 540.

[24] In *Packard v. Shoopman*, 852 N.E.2d 927 (Ind. 2006), our Supreme Court considered the use of the term "jurisdiction" in Indiana Code Section 33-26-6-2,

which provided: "If a taxpayer fails to comply with any statutory requirement for the initiation of an original tax appeal, the tax court does not have jurisdiction to hear the appeal." The Court concluded that compliance with the statutory requirements for initiation of an original tax appeal did "not affect the subject matter jurisdiction of the Tax Court" and, when Indiana Code Section 33-26-6-2 was passed, "the General Assembly used 'jurisdiction' to refer to the now abolished 'jurisdiction over the particular case[.]'" *Packard*, 852 N.E.2d at 930.

[25]  Similarly, here, the use of the term "jurisdiction" in Indiana Code Section 5-11-5.5-7(f) refers to the now abolished "jurisdiction over the particular case." Accordingly, dismissal under Indiana Trial Rule 12(B)(1) for lack of subject matter jurisdiction was improper. *See, e.g., Payne-Elliot*, 193 N.E.3d at 1013 (holding that the trial court erred by dismissing under Trial Rule 12(B)(1) for lack of subject matter jurisdiction where the trial court was "not ousted of subject-matter jurisdiction just because the defendant assert[ed] a religious defense"). Rather, the trial court should have dismissed the action under Trial Rule 12(B)(6) for "[f]ailure to state a claim upon which relief can be granted[.]"

[26]  When an action is dismissed under Trial Rule 12(B)(6), however, "the pleading may be amended once as of right pursuant to [Trial] Rule 15(A) within ten [10] days after service of notice of the court's order sustaining the motion[.]" *Id.* at 1015. Accordingly, we affirm the judgment of dismissal as to all defendants under Trial Rule 12(B)(6), but we modify the judgment to reflect the dismissal is without prejudice. *See id.* Because the trial court properly dismissed pursuant

to Indiana Code Section 5-11-5.5-7(f), we need not address the parties' remaining arguments.

## Conclusion

[27] We affirm the trial court's dismissal of Relator's action pursuant to Indiana Code Section 5-11-5.5-7(f). We conclude, however, that the trial court should have dismissed the action under Trial Rule 12(B)(6) rather than Trial Rule 12(B)(1). Accordingly, the action should have been dismissed without prejudice. As a result, we affirm in part, reverse in part, and remand with instructions to dismiss the action without prejudice.

[28] Affirmed in part, reversed in part, and remanded.

Weissmann, J., and Foley, J., concur.